UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PLANNING AND DEVELOPMENT
DEPARTMENT, CITY OF DETROIT,**

    **Plaintiff(s),**     **CASE NUMBER:05-72328**
                **HONORABLE VICTORIA A. ROBERTS**

v.

**DAUGHTERS OF UNION VETERANS
OF THE CIVIL WAR, 1861-1865, SARAH
M. STERLING TENT NO. 3, et al.,**

    **Defendant(s).**
_____/

**ORDER DENYING PLAINTIFF'S MOTION
TO REMAND CASE TO WAYNE COUNTY CIRCUIT COURT**

**I. INTRODUCTION**

This matter is before the Court on Plaintiff's Motion to Remand Case to Wayne County Circuit Court. The Court **DENIES** Plaintiff's motion.

**II. BACKGROUND**

Plaintiff is the Planning and Development Department of the City of Detroit. Plaintiff filed a Complaint to Quiet Title in Wayne County Circuit Court.[1] Plaintiff requests that clouds placed upon the title to one of its commercial properties by the three Defendant organizations[2] be removed. Defendants removed the case to this

---

[1] *See Planning and Development Dept., City of Detroit v Daughters of Union Veterans of the Civil War,* Wayne County Circuit Court Case Number 05-514287 CH.

[2] Defendants are Daughters of Union Veterans of the Civil War, 1861-1865, Sarah M. Sterling Tent No. 3; Sons of Union Veterans of the Civil War, Ulysses S. Grant Camp

Court claiming that there is diversity jurisdiction. Plaintiff argues that the parties are not diverse, and that the requirement that the amount-in-controversy exceed $75,000 is not met. Plaintiff, therefore, requests that the matter be remanded to state court. The relevant facts are taken from Plaintiff's complaint and the parties' pleadings.

In 1865, General Lewis Cass deeded land to the City of Detroit for the construction of a building to house a public market. A public market was erected at 1942 Grand River, but it was removed in 1896. As a result of lobbying by the Grand Army of the Republic posts, a new monumental building, known as the Grand Army of the Republic Building ("the G.A.R. Building"), was built on the vacant lot. The G.A.R. Building was to provide a place for fellowship for union soldiers who fought in the Civil War. It was completed in 1900 with City of Detroit bond money and a contribution from the Grand Army of the Republic.

In approximately 1897 or 1898, the Grand Army of the Republic leased the G.A.R. Building from Plaintiff pursuant to a 30-year lease. The lease included a provision indicating that title and all right of use or occupation would vest in the City of Detroit at the end of the 30-year period. The lease expired in 1927,[3] but was extended to 1934. Thereafter, various public entities occupied the building. Women's auxiliary organizations connected to the Grand Army of the Republic were permitted to hold meetings in the building until 1973.

The G.A.R. Building has been vacant since 1982. The City of Detroit now wants

---

No. 101; and, Michigan Department, Daughters of Union Veterans of the Civil War.

[3]Apparently, the lease term began before the building was completed in 1900.

to sell it. In 2000, however, each Defendant recorded a "Notice of Claim of Interest" with the Wayne County Register of Deeds. In the Notices, Defendants claim an interest in the G.A.R. Building, pursuant to the Monumental Buildings Act ("MBA"), M.C.L. §35.854. They assert the interest on their behalf as well as "a class of claimants consisting of all surviving organizations of the descendants of union soldiers whose identities cannot be established or are uncertain at the time of filing this notice of claim for record." *See* Complaint, Exh. 3.

Although the Notices were signed by individuals purporting to be the presidents of each Defendant organization and list Michigan addresses, Defendants state that they are each a local subordinate of federally chartered corporations bearing the same name--Sons of the Union Veterans of the Civil War ("Sons of the Union") and Daughters of Union Veterans ("Daughters of the Union") of the Civil War 1861-1865 (collectively "Sons and Daughters"). Sons and Daughters were established as Patriotic and National Organizations. *See* 36 U.S.C. §§200301, 50102. Sons of the Union is incorporated in the District of Columbia. 36 U.S.C. §200.301. Daughters of the Union is incorporated in Ohio. 36 U.S.C. §50102. The national organizations approve and issue charters for subordinate divisions, known as Departments, some of which cover more than one state. The Departments, which operate under the control and authority of the national organizations, then have the authority to charter Tents or Camps. The Tents and Camps operate under the control and authority of the Departments.

Referring to the monetary contribution made by the Grand Army of the Republic at its inception, Defendants say the G.A.R. Building was jointly constructed by Grand Army of the Republic and the City of Detroit. Therefore, under the MBA, Defendants

contend that they have property rights in the G.A.R. Building.  The MBA pertains to veteran memorials and states:

> Sec. 4. Such buildings and structures shall be and remain the property of the municipal corporations in undivided interests proportionate to the contributions made by each in the original construction cost of such building or structure.  ***Such monumental buildings as were erected jointly by any township, village, city or county and any post or posts or the department of Michigan, of the order known as the grand army of the republic shall be forever dedicated as memorial buildings to the memory of the union soldiers of the war of the rebellion, and all relics, documents, books, papers and library belonging to any such grand army post, or which may be deposited afterwards for such purpose, shall be cared for therein by proper supervision, by the public authorities, in a proper room or rooms kept for that purpose, and which shall at all reasonable times be kept open and free to the public.***  In case any surviving organization of the descendants of such union soldiers become and remain an incorporated body, such incorporated organization may, at its option, and said municipal corporation is hereby authorized and required, if so desired, to permit the said incorporated organization to maintain, so far as possible, the same relations to the municipal corporation in said buildings, as the posts or department of the grand army of the republic might or could do. ***The amount of money contribution by any post or department of the grand army of the republic to the construction of said building, shall be and remain so long as may be necessary a perpetual fund devoted to the maintenance of such building as a memorial building.***

M.C.L. §35.854 (emphasis added).  Plaintiff acknowledges that this statute imposes an obligation upon the City of Detroit to maintain the G.A.R. Building as long as it owns the property.  However, Plaintiff contends that it does not preclude the City of Detroit from selling the property to a private entity, contrary to Defendants' apparent interpretation of the statute.

In their Notice of Removal, Defendants claim complete diversity based on the domicile of the principal organizations.  They further assert that the jurisdictional amount

is met because the value of the G.A.R. Building and their interest in the property exceeds $75,000.  Plaintiff disputes both assertions and requests that the matter be remanded to state court.

### III.   APPLICABLE LAW AND ANALYSIS

A civil case brought in state court may be removed by a defendant to federal district court if the case could have been brought in federal court originally.  28 U.S.C. §1441(a).  The burden of establishing, by a preponderance, that there is federal jurisdiction is on the removing defendant.  *Wilson v Republic Iron & Steel Co.,* 257 U.S. 92, 97 (1921); *McNutt v General Motors Acceptance Corporation of Indiana*, 298 U.S. 178, 189 (1936); *Gafford v General Electric Company,* 997 F.2d 150, 155 (6th Cir. 1993). All doubts are to be resolved against removal.  *Her Majesty the Queen in Right of the Province of Ontario v City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989).

Defendants removed this case asserting that there is "diversity" jurisdiction. District courts have original "diversity" jurisdiction over any civil action "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs[,]" and is between citizens of different states."  28 U.S.C. §1332(a)(1).  Plaintiff contends that neither element is met in this case.  For the reasons stated below, the Court disagrees and finds that diversity jurisdiction has been established.

#### A.   Diversity of Citizenship

Defendants assert that, for purposes of diversity, the citizenship of their respective local organizations is determined by the citizenship of the national organizations of which they are subordinates.  Therefore, notwithstanding the addresses listed in each Notice of Claim of Interest, Defendants contend that they, like

5

Sons and Daughters, are citizens of the District of Columbia and Ohio.  Plaintiff disputes Defendants' assertion arguing that they, not the national parent organizations, are the real party in interest, because Defendants filed the Notices that Plaintiff seeks to have removed and they listed their local addresses.  Plaintiff further argues that there is no evidence that Defendants' filing of the Notices or removal of this case was authorized by the national organizations, or that the national organizations support Defendants' efforts.

Defendants' citizenship for purposes of diversity depends on whether they are independent subsidiaries or merely divisions of the national organizations.  In *Schwartz v Electronic Data Systems, Inc.*, 913 F.2d 279, 282 (6th Cir. 1990), the Court held that the citizenship of a subsidiary governs for diversity purposes when the parent and subsidiary maintain separate identities:

> When formal separation is maintained between a corporate parent and its corporate subsidiary, federal court jurisdiction over the subsidiary is determined by that corporation's citizenship, not the citizenship of the parent.

However, in its analysis, the Court distinguished the situation where a *division* of a corporation, rather than a subsidiary, is involved.  Referring to the Seventh Circuit's decision in *Wisconsin Knife Works v National Metal Crafters,* 781 F.2d 1280 (7th Cir. 1986), the *Schwartz* Court stated:

> A division of a corporation does not possess the formal separateness upon which the general rule is based, and thus is not an independent entity for jurisdictional purposes.

Raising the question *sua sponte*, the *Wisconsin Knife* court stated that an

unincorporated division of a corporation may, if permitted under state law, sue and be sued in its own name under FRCP 17(b).[4]  However, "the state of which [the division] is a citizen for purposes of determining diversity is the state of which the corporation that owns the division is a citizen." *Wisconsin Knife,* 781 F.2d at 1282.  *See also United Computer Capital Corp. v Secure Products, L.P.,* 218 F.Supp. 2d 273, 279 (N.D. N.Y. 2002)("The state of citizenship of which an unincorporated division of a corporation is a citizen for the purpose of determining diversity is the state of which the corporation that owns the division is a citizen . . . .").

Defendants provide affidavits from James B. Pahl, Senior Vice Commander in Chief of the National Organization, Sons of Union Veterans of the Civil War, and Lesley Gouin Dean, President of the National Organization, Daughters of Union Veterans of the Civil War, 1861-1864.  Both Mr. Pahl and Ms. Dean indicate that each of the Defendants operates as a subordinate division of the National Organizations.  Per Pahl and Dean, Defendants operate under the control and authority of the National Organizations via its internal hierarchy.

There is no evidence that any of the Defendants are incorporated in Michigan or

---

[4]FRCP 17(b) states in relevant part:

**(b) Capacity to Sue or be Sued.** The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States.

elsewhere, and Plaintiff does not refute Pahl's and Dean's assertions. Nor does Plaintiff cite any authority which indicates that the fact that Defendants maintain local addresses and acted in their own name (in filing the Notices) alter the Court's analysis regarding citizenship. Whether or not the national organizations were aware of and authorized the filing of the Notices, and the extent to which they support Defendants in this litigation, also has no bearing on Defendants' citizenship. Under *Schwartz*, Defendants are citizens of the District of Columbia and Ohio for purposes of diversity jurisdiction. Plaintiff indisputably is a Michigan resident. Therefore, the diversity of citizenship requirement is met.

### B.    Amount-in-controversy

In this action to quiet title, Plaintiff only asks for injunctive relief-- removal of the Notices as clouds on the chain of title. Therefore, Plaintiff argues that Defendants cannot satisfy the amount-in-controversy requirement, because Plaintiff did not request monetary damages in its complaint and Defendants only speculated in its Notice of Removal regarding the value of their anticipated counterclaim.[5]

Defendants assert that the amount requested in Plaintiff's complaint is not dispositive. Rather, they argue that whether the amount-in-controversy is satisfied is determined by the value of the "object of the litigation," regardless of what damages are sought. In this case, Defendants say the object of the litigation is Plaintiff's attempt to void Defendants' property interest and obtain relief from the obligations imposed by the

---

[5]Defendants subsequently filed their counterclaim and requested $1 million in damages. *See* Defendants' Counterclaim and Jury Demand, ¶111.

MBA.[6]  Therefore, Defendants contend that the fact that only injunctive relief is sought by Plaintiff is irrelevant.

Defendants argue that the value of the object of the litigation can be measured in a number of ways, all of which satisfy the $75,000 minimum requirement.  First, Defendants argue that their right to use and occupy the G.A.R. Building into perpetuity, regardless of the rental rate, necessarily has a present value that exceeds $75,000.  Conversely, Defendants contend that Plaintiff will derive monetary benefit (presumably also in excess of $75,000) if it is relieved of its ongoing maintenance obligations.

Second, Defendants contend that the value of their property interest can be measured by the cash value of the G.A.R. Building, which Defendants say is at least $525,900, according to City of Detroit public tax records.

Third, Defendants contends that what it refers to as the "trust fund" has a present value of at least $139,860.  The trust fund, per Defendants, is derived from $6,000 that the Grand Army of the Republic contributed to build the G.A.R. Building.  Defendants contend that Plaintiff was required by the MBA to use the contribution to maintain a perpetual fund devoted to the maintenance of the building as a memorial building.

Plaintiff asserts that the MBA does not confer ownership rights in the G.A.R. Building on Defendants.  Rather, Plaintiff contends that the only interest the Grand Army of the Republic had was its lease, which expired in 1934.  To the extent that Defendants are heirs of the Grand Army of the Republic, Plaintiff contends that their interests were,

---

[6]In their numbered motion, Defendants say that Plaintiff's obligations include maintaining the property for the benefit of Defendants and others and managing a perpetual fund devoted to the maintenance of the building (a "trust fund").

likewise, extinguished.

Second, Plaintiff asserts that Defendants were aware that the G.A.R. Building was sold on land contract to a private company, the Citadel Company, in 1984. As no objection was made to that sale,[7] Plaintiff states (without citation to any authority) that Defendants waived the right to object at this juncture.

Third, Plaintiff asserts that the City's acceptance of the Citadel Company's offer to buy the property for $50,000 is the last approved valuation of the property. Therefore, Plaintiff argues that the Court should rely on this valuation rather than city tax records.

Lastly, Plaintiff attaches a copy of the Detroit Journal of Common Council records, dated February 7, 1899, which only shows a Grand Army of the Republic donation in the amount of $3,000. Plaintiff asserts that this contribution does not have a present value of $75,000 or more. In any event, Plaintiff points out that the statute only requires that a "perpetual" fund be maintained "so long as may be necessary:"

> The amount of money contribution by any post or department of the grand army of the republic to the construction of said building, shall be and remain so long as may be necessary a perpetual fund devoted to the maintenance of such building as a memorial building.

M.C.L. §35.854. Plaintiff contends that this phrase was included to establish that it has discretion to make the assessment of how long is necessary.

In assessing whether the amount-in-controversy requirement is met here, the Court must determine: 1) the proper measure of the amount-in-controversy; and 2)

---

[7] Per Plaintiff, the sale ultimately fell through when the Citadel Company was unable to fulfill the land contract requirements.

10

whether Defendants have carried their burden. Defendants are correct regarding the first question. "In actions seeking declaratory or injunctive relief, it is well established that the amount-in-controversy is measured by the value of the object of the litigation." *Hunt v Washington State Apple Advertising Commission,* 432 U.S. 333, 347 (1977); *Cincinnati Insurance Co. v Zen Design Group, LTD,* 329 F.3d 546, 548 (6th Cir. 2003). Plaintiff's reliance upon *White v Otis Elevator Corp.,* 2003 W.L. 22928364 (E.D. Mich. 2003) and *Tonyco v Equity Marketing, Inc.,* 2000 W.L. 654957 (E.D. Mich. 2000), for the proposition that the amount pled in the complaint is controlling is misplaced, because neither *White* nor *Tonyco* involved injunctive relief.

The second question is less straightforward. The Court must determine what the "object of the litigation" is and the value of it. The analysis in rulings rendered by the Supreme Court and within this Circuit are instructive. For instance, in *Hunt v Washington State Apple Advertising Commission, supra*, the plaintiff Commission brought an action challenging the constitutionality of a North Carolina statute because compliance with the statute required Washington apple growers to either abandon the North Carolina market or incur substantial additional costs. The Supreme Court stated that the object of the litigation was the right of the Washington apple growers to conduct their business in the North Carolina market free from the interference of the challenged statute. The value of that right, said the Court, was the loss the apple growers would suffer from the statute's enforcement.

Similarly, in *Cincinnati Insurance Co. v Zen Design Group, LTD, supra,* an insurer brought a declaratory judgment action seeking affirmation that it was not obligated to defend or indemnify its insured in a lawsuit brought against the insured.

11

The Court stated that the object of the litigation was the defense of the lawsuit. It measured the value of the object of the litigation by the amount the insured incurred in defending itself.

Lastly, in *Great Lakes Spice Co. v GB Seasonings,* 2005 W.L. 1028177 (E.D. Mich. 2005), a former employee, Skip Asmus, and his new employer sued Asmus' former employer, GB Seasonings, after GB Seasonings threatened to enforce a non-compete agreement against Asmus. In addition to Asmus' claims of breach of contract and wrongful discharge, both plaintiffs sought declaratory relief that would render the non-compete agreement unenforceable. Because Asmus' breach of contract and wrongful discharge claims did not satisfy the jurisdictional amount, the Court considered the value of the requested injunctive relief. Following *Hunt*, the Court measured the value of the litigation by the potential losses plaintiffs would suffer if the non-compete agreement was enforced. In conjunction with the monetary damages sought, the Court found that the jurisdictional amount was satisfied. Plaintiffs argued that, in their view, the agreement was not valid and, therefore, had no value. The Court declined to weigh this assertion in its jurisdictional analysis, however, stating that it went to the merits of the case, not the potential amount-in-controversy.

Following the analysis of the Courts in *Hunt*, *Cincinnati Insurance,* and *Great Lakes Spice*, it appears that the "object of the litigation" is determined by the relief sought by the plaintiff, and the value of the object of the litigation (the amount-in-controversy) is the potential loss to the plaintiff if relief is denied. Applying that reasoning in this case, Defendants have met their burden.

The object of the litigation is Plaintiff's request that the Court remove the Notices

filed by Defendants because they are impediments to the sale of the G.A.R. Building. In this case, at least one measure of the value of the object of the litigation is the market value of the G.A.R. Building. If Plaintiff cannot remove the clouds created by the Notices, presumably it cannot sell the G.A.R. Building for market value--which the most recent tax records indicate is $525,900.[8] Plaintiff does not concede the accuracy of the tax records, but does not present any evidence to refute it. Instead, Plaintiff presents documents showing that the last offer of purchase accepted by the City of Detroit, which was extended by the Citadel Company in 1984, was for $50,000. Therefore, Plaintiff suggests that this is the last valid valuation of the property. The Court is not persuaded that an offer of purchase in 1984 is a more reliable indicator of the current value of the G.A.R. Building than the City of Detroit's own valuation of the property in tax records just three years ago. The Court finds the most recent tax records controlling on the market value of the property. Consequently, the Court finds that Plaintiff would minimally suffer a monetary loss of at least $525,900 if the relief it requests in its complaint is denied. Therefore, the amount-in-controversy requirement is satisfied.

The Court makes no finding on Plaintiff's claim that Defendants do not have a legal interest in the G.A.R. Building via the MBA or otherwise. As in *Great Lakes Spice*, the dispute regarding whether Defendants have a cognizable property interest in the G.A.R. Building goes to the merits and is not properly before the Court at this stage of the litigation.

## V.   CONCLUSION

---

[8]Defendants attached a copy of City of Detroit tax records which indicate that, as of 2002, the G.A.R. Building was assessed to have a true cash value of $525,900.

Plaintiff's motion is **DENIED**.

**IT IS SO ORDERED.**

                                                s/Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated:  November 28, 2005

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 28, 2005.

s/Linda Vertriest
Deputy Clerk

---